IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

David McDermott,

      Plaintiff,

     v.                            Case No. 2:06-cv-0785
                                      JUDGE GRAHAM
Continental Airlines, Inc.,

      Defendant.

## OPINION AND ORDER

This action arises out of Plaintiff David McDermott's complaint for damages against his former employer, Defendant Continental Airlines, Inc. Plaintiff asserts claims under Ohio law against Defendant for workers' compensation retaliation, wrongful discharge in violation of Ohio public policy, and employer intentional tort. Plaintiff filed his action in the Franklin County Court of Common Pleas and Defendant timely removed. The matter is presently before the court on Defendant's motion for summary judgment as to each of Plaintiff's claims.

## STANDARD OF REVIEW

Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir. 1993); Osborn v. Ashland County Bd. of Alcohol, Drug Addiction & Mental Health Servs., 979 F.2d 1131, 1133 (6th Cir. 1992)(per curiam). The moving party has the burden of demonstrating that

there are no genuine issues of material fact in the case, <u>LaPointe</u>, 8 F.3d at 378, which it may accomplish by showing that the nonmoving lacks evidence to support an essential element of its case.  <u>Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A.</u>, 12 F.3d 1382, 1389 (6th Cir. 1993).

In response, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" <u>Street v. J. C. Bradford & Co.</u>, 886 F.2d 1472, 1476 (6th Cir. 1989) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 257 (1986)).  "[T]he mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine</u> issue of <u>material</u> fact."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986) (emphasis in original); <u>see generally</u> <u>Booker v. Brown & Williamson Tobacco Co., Inc.</u>, 879 F.2d 1304, 1310 (6th Cir. 1989).

In reviewing a motion for summary judgment, the court "must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" <u>Patton v. Bearden</u>, 8 F.3d 343, 346 (6th Cir. 1993)(quoting <u>Anderson</u>, 477 U.S. at 251-52).  The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986); <u>see also</u> <u>Eastman Kodak Co. v. Image Technical Servs., Inc.</u>, 504 U.S. 451, 456 (1992).  However, "[t]he mere existence of a scintilla of evidence

2

in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. See also Gregory v. Hunt, 24 F.3d 781, 784 (6th Cir. 1994). Finally, a district court considering a motion for summary judgment may not weigh evidence or make credibility determinations. Adams v. Metiva, 31 F.3d 375, 378 (6th Cir. 1994).

## FACTS

Plaintiff had a career that lasted more than sixteen years with Defendant at its Cleveland and Columbus terminals. During that time, Plaintiff held various positions with Defendant and with Continental Express in Cleveland. Plaintiff held the positions of cargo agent, cargo lead agent, mail lead agent, customer service officer, and supervisor of airport services. As a supervisor, Plaintiff had various responsibilities, including ensuring compliance with safety procedures and overseeing employees during the loading and unloading of baggage from aircraft. In 2002, Plaintiff transferred to Columbus, where he was employed as a Customer Service Agent ("CSA") until his employment was terminated. As a CSA, Plaintiff's job duties included loading and unloading bags and transporting freight and mail. On three occasions while working at the Columbus terminal, Plaintiff sustained injuries in the course of performing his job duties. In 2003, and again in 2005, Plaintiff injured himself while lifting heavy bags. In December 2005, he sustained a knee injury when he slipped on fluid that was on a ramp.

Over the course of his tenure at the Columbus terminal, Plaintiff observed and reported numerous safety violations to the manager of the terminal, Mr. Mark Dooley, and to Defendant's safety

3

hotline. These safety complaints included allegations of violations of Federal Aviation Administration ("FAA") regulations in addition to general complaints about workplace safety. Plaintiff began making his complaints about safety in 2003.

On February 2, 2006, an America West Airline employee at the Columbus airport discovered damage to an America West baggage carousel. Dooley Aff. ¶ 2, Ex. A. The Columbus Airport Authority Police Station was dispatched to investigate the damage. Id. According to the police report of one of the investigating officers, the damage was "extensive," and consisted of a "bent door frame, damage to a guard around the motor for the carousel, a bag belt support and other miscellaneous damage." Id. America West's baggage belt system became inoperable as a result of this damage. Dooley Dep. at 136. Crime Scene Technicians were called to the scene and conducted an investigation. Through the investigation, the officers determined that:

> A tug, driven by an unknown person, had to have pulled a cart(s) down the east side of the south makeup area, made a sharp U-turn around a concrete pillar #A, leaving scrape marks and paint on the north side of the pillar. This turn caused a slight slingshot effect on the following cart(s), increasing the speed of the carts and causing it to strike another pillar on the west wall. The cart then struck a steel door frame #C causing damage. The cart then traveled northbound striking the bag belt and caused it to jump up and strike the overhead carrousel [sic] and causing damage.

Dooley Aff., Ex. B. The officers located the cart that had been involved in this accident and concluded that the cart was one of Defendant's carts, identified as Cart #BN3909. Dooley Aff., Exs. A & B. The investigating officers showed the cart to Mr. Dooley, who agreed that it was the cart that caused the damage. Dooley

4

Aff., Ex. A.  Mr. Dooley informed the officers that he would investigate to determine who was driving the cart and let them know.  It was agreed that America West Ground Maintenance personnel would repair the damage and that Defendant would pay the costs of repair.  Id.  Following the conversation with the police officers, Mr. Dooley, as well as Defendant's Operations Supervisor, Mr. Scott Bradach, undertook an extensive investigation to determine which one of Defendant's employees had been responsible for the damage to the America West equipment.  Mr. Dooley interviewed employees, including Plaintiff, and obtained written statements from some of them.  Mr. Dooley also spoke with the Station Supervisor for America West, Mr. Dennis McKee, upon learning that Mr. McKee had provided information to the police regarding this accident.  Mr. McKee also provided Mr. Dooley with statements about his knowledge of the accident, as well as a photo identification of the employee he observed in the baggage room shortly after the accident.  That employee was Plaintiff.

Although Plaintiff never admitted any involvement in the accident, Mr. Dooley determined from his investigation that Plaintiff had been involved in the accident, failed to report it, and was dishonest about his involvement during the investigation. Consequently, on February 15, 2006, Defendant terminated Plaintiff's employment.  Plaintiff's termination letter stated in pertinent part:

> During our multiple investigative discussions, you were less than cooperative and forth coming [sic] of any information regarding your job duties or whereabouts during the time frame in question.  You also feigned ignorance as to the accident itself.  Your position in this matter is in stark contrast with that of other Team members on duty at that time.

* * *

> David, given the facts at hand, I have come to the
> conclusion that you were involved in this accident and
> that you have not been truthful or forthcoming during my
> investigation of this situation.  Given this situation,
> I am compelled to inform you that I am terminating your
> employment with Continental Airlines effective February
> 15, 2006.

McDermott Dep., Ex. 3.  Following his termination, Plaintiff

pursued the termination appeals process.  During that process,

Plaintiff submitted a written statement in which he conceded that

he may have been involved in the accident.  Plaintiff stated:

> I do not deny, (nor have I at any time during [Dooley's]
> investigation) denied [Dooley's] theory that I may be
> responsible for the damage.  It may have been my cart
> that hit the belt.  I am not here to dispute that
> possibility.
>
> I do however, strongly object to his second conclusion
> (that I was not truthful and forthcoming).  At no time
> during his investigation did I ever lie or omit
> information.  I was forthcoming, I've told him, "It's
> possible I did it, however I wasn't aware of it.  Had I
> known, I would have reported it."

McDermott Dep., Ex. 22.  Plaintiff's request for reinstatement was

denied.  Consequently, Plaintiff instituted the present action and

the matter is now before the court on Defendant's motion for

summary judgment.

## ANALYSIS

### I.  Workers' Compensation Retaliation Claim

Ohio law prohibits an employer from retaliating against an

employee because he filed a workers' compensation claim.  Ohio

Revised Code § 4123.90 provides:

> No employer shall discharge, demote, reassign, or take
> any punitive action against any employee because the

> employee filed a claim or instituted, pursued or testified in any proceedings under the workers' compensation act for an injury or occupational disease which occurred in the course of and arising out of his employment with that employer.

Ohio Rev. Code § 4213.90. This provision is narrow in scope and does not prevent an employer from discharging an employee who is unable to perform his duties, or for any just and lawful reason. White v. Mt. Carmel Med. Ctr., 150 Ohio App. 3d 316, 328 (Ohio Ct. App. 2002). Rather, the statute protects only against termination in direct response to the filing or pursuit of a workers' compensation claim. Id.; Markham v. Jorgensen Co., 138 Ohio App. 3d 484, 493 (Ohio Ct. App. 2000). To establish a claim of retaliatory discharge, Plaintiff must show that: (1) he engaged in protected activity; (2) he was the subject of an adverse employment action; and (3) a causal link existed between the protected activity and the adverse action. White, 150 Ohio App. 3d at 328. If a plaintiff makes this prima facie case, the burden shifts to the defendant to give a legitimate, nondiscriminatory reason for the action. Id. If the defendant meets this burden, then the plaintiff must show that the articulated reason was a pretext for the adverse action. Id. Ohio courts rely upon federal case law in analyzing a retaliation claim. See Aycox v. Columbus Bd. of Educ., No. 03AP-1285, 2005 Ohio App. LEXIS 59, at *10 (Ohio Ct. App. Jan. 11, 2005) (citing Peterson v. Buckeye Steel Casings, 133 Ohio App. 3d 715, 727 (Ohio Ct. App. 1999)); Chandler v. Empire Chem., Inc., 99 Ohio App. 3d 396, 401 (Ohio Ct. App. 1994).

**A.    Prima Facie Case of Retaliation**

As the basis for Plaintiff's workers' compensation claim, Plaintiff alleges that he sustained a back injury when he lifted a heavy bag at work on September 20, 2005. Plaintiff filed a workers' compensation claim for this injury on that same day. Compl. ¶ 41. Approximately five months later, on February 16, 2006, Plaintiff's employment with Defendant was terminated. Plaintiff contends that he was terminated because he pursued his rights under the workers' compensation statute. It is undisputed that Plaintiff engaged in a protected activity by pursuing his claim for workers' compensation and that he suffered an adverse employment action – the termination. To establish a prima facie case, however, Plaintiff must also prove that a causal link existed between the protected activity and the adverse action. Plaintiff has failed to come forward with evidence sufficient to establish a causal connection.

In support of this claim, Plaintiff seeks to rely upon a statement allegedly made by Mr. Dooley in response to a separate injury which is not the basis for Plaintiff's workers' compensation claim. On or about December 12, 2005, Plaintiff allegedly injured his knee as the result of slipping in deicing fluid. McDermott Dep. at 95. Plaintiff had previously complained to Mr. Dooley about the presence of excessive deicing fluid on the ramp. Id. at 214. According to Plaintiff, upon learning of the knee injury, Mr. Dooley commented to another employee, Ms. Jody Dickson, that Plaintiff was faking the knee injury to simply "prove a point." McDermott Dep. at 95. Mr. Dooley does not recall making that statement and did not believe that Plaintiff faked his injury. He said that it did seem coincidental that Plaintiff would be injured

8

as the result of a matter about which he had recently raised a safety complaint. Dooley Dep. at 83-85.

First, Plaintiff has offered nothing but his own deposition testimony in support of the fact that Mr. Dooley made this statement. Plaintiff does not provide an affidavit of Ms. Dickson, the person to whom the statement was allegedly made. Second, the statement was allegedly made in response to an injury which is not the basis for Plaintiff's workers' compensation retaliation claim. Even assuming Mr. Dooley did, in fact, make such a statement, the statement is irrelevant to whether Mr. Dooley discharged Plaintiff in retaliation for pursuing his workers' compensation claim with regard to the back injury which occurred on September 20, 2005. Third, the statement suggests no animus on the part of Mr. Dooley because Plaintiff reported the injury, nor does the statement suggest an intent on the part of Mr. Dooley to retaliate against Plaintiff for reporting the injury. As Defendant correctly observes, the workers' compensation statute allows employers the opportunity to contest workers' compensation claims. See Ohio Rev. Code § 4123.511; see also Ohio ex rel. Eckerly v. Industrial Commission of Ohio, No. 03AP-621, 2004 Ohio App. LEXIS 3568, at *7 (Ohio Ct. App. July 27, 2004) (observing that a matter had been referred to the Industrial Commission because the employer wished to contest a request for temporary total disability compensation). As general manager, Mr. Dooley had the right to question the legitimacy of Plaintiff's injury claim, and any statement he may have made to that effect is not evidence that Defendant intended to retaliate against Plaintiff for exercising his rights under the workers' compensation statute.

Plaintiff also argues that the proximity in time between the filing of his workers' compensation claim on September 20, 2005, and his termination on February 15, 2006, supports a causal link between the two events. However, temporal proximity alone is insufficient to support a causal connection. Cunningham v. Kroger Co., No. C-050990, 2006 Ohio App. LEXIS 5844, at *10 (Ohio Ct. App. Nov. 9, 2006)(citing Pflanz v. Cincinnati, 149 Ohio App. 3d 743 (Ohio Ct. App. 2002)). Indeed, as the Cunningham court observed, "absent other direct or compelling circumstantial evidence, temporal proximity alone is insufficient to support a finding of causal connection." Cunningham, 2006 Ohio App. LEXIS at *10. Plaintiff has come forth with neither direct nor compelling circumstantial evidence and, consequently, fails to demonstrate a prima facie case of retaliation.

## B. Legitimate, Non-retaliatory Reason

Even assuming that Plaintiff had established a prima facie case, Defendant has produced a legitimate, non-retaliatory reason for Plaintiff's termination – its honest belief, based upon an extensive investigation, that Plaintiff was responsible for the February accident which caused significant damage to the America West equipment and that Plaintiff was dishonest about his involvement. In support of its motion for summary judgment, Defendant sets forth affidavits, deposition testimony, and witness statements from Mr. Dooley's investigation,[1] among other evidence, which establish the various steps it undertook to determine which of its employees was responsible for the February accident.

---

[1] The court notes that witness statements contained in an investigative report may be considered on summary judgment not to prove their truth, but to demonstrate the state of mind of Defendant's managers in discharging Plaintiff. See Michael v. Caterpillar Fin. Servs. Corp., 496 F.3d 584, 598 (6th Cir. 2007).

Shortly after the police asked Messrs. Bradach and Dooley to investigate the accident of February 1, 2006, they began interviewing all of the employees who were on duty that night and the following day. Dooley Dep. at 137-38. One employee, Aaron Holden, stated that approximately ten minutes after Flight 2212 arrived from Cleveland, the lead agent informed him that the luggage was en route. Id.; Dooley Dep., Ex. 7. Mr. Holden stated that one or two minutes later, he heard two crashes. The first crash was extremely loud and Mr. Holden could hear "lots of screatching [sic] of tires & breaks" during the crash. Dooley Dep., Ex. 7. Mr. Holden stated that he looked in the baggage room to determine who caused the crash and he saw Defendant's tugs or carts. On the day following the accident, Plaintiff "very nervously approached [him] and questioned [him] about what [he] saw when the accident occurred. Right at the start of my shift. I find this to be quite odd since he was the one that ran the bags of [sic] of the [flight]." Id. Ravi Sinha, the lead agent on duty the night of the accident, also provided Mr. Dooley with a statement that confirmed that Plaintiff was the employee who ran the bags from Flight 2212 to the baggage room that night. Dooley Dep., Ex. 9.

Mr. Dooley also met with Plaintiff on several occasions to discuss the accident. The day after the accident, Plaintiff met with Mr. Dooley. Mr. Dooley asked if Plaintiff knew whether anyone had an accident in the baggage room. Plaintiff replied that he "went down to the bag room when [he] got there and looked around, [he] saw the – there had been some damage there. And Mark asked [him] if [he] had anything to do with it and [he] said no." McDermott Dep. at 322. Plaintiff testified that he also told Mr.

11

Dooley that he did not know whether there was any damage that he caused, but that if he had known, he would have reported it.  Id. at 324-25.

After this meeting, Plaintiff provided Mr. Dooley with a written statement.  That statement, dated February 2, 2006, read: "I worked as a CSA on February 1, 2006.  During my time worked I ran bags to the bagroom, I loaded and unloaded aircraft, and may have even ran cargo to World Wide."  McDermott Dep. at 327-28; McDermott Dep., Ex. 15.  Mr. Dooley considered Plaintiff's statement to be vague in that it did not answer the questions Mr. Dooley recalled posing during their meeting, namely, whether Plaintiff was aware of any incidents the previous night, whether he was involved in an accident, and, more specifically, whether he ran bags from Fight 2212.  Because of this, Mr. Dooley asked Plaintiff for more specifics.  Dooley Dep. at 185; McDermott Dep. at 330-31. Plaintiff added the following sentences to his statement: "Mark wanted to know if I had an ordinary day? [sic] To the best of my knowledge, I had an ordinary day."  McDermott Dep., Ex. 15. Despite Plaintiff's knowledge that Mr. Dooley was investigating the accident which occurred the evening before, Plaintiff did not indicate in his statement whether he was involved in the accident or had any knowledge of it.  See id.

After speaking with Plaintiff, Mr. Dooley spoke with Mr. McKee of America West Airlines.  Dooley Dep. at 191, 194-97; Dooley Aff. ¶ 3, Ex. C.  Mr. McKee had provided information about the accident to the police and also provided Mr. Dooley with a statement summarizing his knowledge of the accident.  Dooley Aff. ¶ 3, Ex. C. Mr. McKee stated that on February 1, 2006, at approximately 9:45 p.m., he and two other America West employees "heard, and felt, a

12

loud noise below us, in the Baggage Belt Drop area tunnel." <u>Id.</u> Mr. McKee decided to investigate the cause of the noise. When he arrived in the baggage area, he "noticed a slight haze in the air as dust and dirt particles were still suspended in the air from some type of impact." <u>Id.</u> Mr. McKee looked to his left, but saw no activity. When he looked to his right, however, he saw one of Defendant's bag tugs and carts and observed an employee putting luggage on a belt. Mr. McKee noted that the employee saw him and waved at him. <u>Id.</u> From where Mr. McKee was standing, he could see no damage and understood the employee's wave to mean that everything was fine. <u>Id.</u> When Mr. McKee arrived at work the following morning, however, he was shown the damage that had occurred the night before. Mr. McKee then called the Airport Police, gave a statement to the investigating officer, and offered to speak with Mr. Dooley. <u>Id.</u>

After Mr. Dooley learned that Mr. McKee had seen someone in the baggage room shortly after hearing the noise, Mr. Dooley showed Mr. McKee photographs of three of Defendant's employees who were believed to have run bags the night of the accident. Mr. Dooley wanted to determine if Mr. McKee could identify the person he observed in the baggage room. Dooley Dep. at 199-201. Mr. McKee identified Plaintiff as the employee. <u>Id.</u>; Dooley Aff. ¶¶ 4-5, Ex. D.

During Mr. Dooley's investigation, he learned that on the night of the accident, when Flight 1492 arrived at approximately 10:14 p.m., <u>see</u> Dooley Aff., Ex. A, after the arrival of Flight 2212, another employee of Defendant, Mr. Ron Heischman, observed Plaintiff moving very slowly in the process of taking a car seat upstairs for a passenger. Dooley Dep., Ex. 5. Shortly thereafter,

13

Mr. Heischman saw Plaintiff lying down in a cart. Lead Agent Sinha also observed Plaintiff lying in the cart and stated that Plaintiff told him that he was not feeling well. Dooley Dep., Ex. 6. Mr. Heischman noted that during the download of Flight 1492, Plaintiff never lifted a bag. Dooley Dep., Ex. 5. A third employee, Tony Triplet, provided a statement to Mr. Dooley confirming that Plaintiff was not feeling well on the night in question and told him that he "did not know if he was having a heart attack or simple indigestion due to the pains in his chest." Dooley Dep., Ex. 18. Mr. Triplet also observed Plaintiff lying in the cart. Id. Mr. Triplet thought that Plaintiff was "moving very slowly as he moved toward the cart as if he was hurt or in serious pain." Id.

In light of the information that Mr. Dooley learned through his investigation, Mr. Dooley concluded that Plaintiff, in fact, had not had an ordinary day, had been involved in the accident, and had been less than forthcoming with the truth. Dooley Dep. at 241. Mr. Dooley did not terminate Plaintiff's employment at that time, however. Instead, he suspended Plaintiff with pay pending further investigation. McDermott Dep. at 333-34.

On or about February 13, 2006, Mr. Dooley met with Plaintiff again to discuss the accident. Mr. Dooley invited two other witnesses, Ms. Marilyn Huber and Ms. Jody Dickson, to the meeting. Mr. Dooley also allowed Plaintiff to bring a witness to the meeting, and Mr. Bob Bebber accompanied Plaintiff. Following the meeting, all three of the witnesses who were present signed a summary of the conversation which was prepared by Mr. Dooley. McDermott Dep., Ex. 17. During Plaintiff's deposition, Plaintiff had an opportunity to review this document. McDermott Dep. at 336. Plaintiff has not disputed the authenticity of the document.

14

During the meeting, Mr. Dooley advised Plaintiff that he had continued his investigation of the incident, that he had been given statements from other employees which clearly described what their roles and duties were on the evening in question, and that he had not received a clear statement from Plaintiff. Id. Mr. Dooley explained in greater detail the extent of the damage caused by the incident and told Plaintiff that he wanted to give him another opportunity to "give [him] a more clear statement of what [his] role was during [his] shift and specifically during the running of the inbound bags on flight 2212 on Feb. 1, 2006 at approx. 9:30 p.m." Id. Mr. Dooley asked Plaintiff if he would like to provide any further information than what he had previously given about his role on the evening of the accident. Plaintiff's response was, "No." Id. Mr. Dooley then advised Plaintiff that he would conclude his investigation in the following couple of days.

Based upon this investigation, Defendant terminated Plaintiff's employment on February 15, 2006. Defendant concluded that Plaintiff had been involved in the accident and was not truthful or forthcoming during the investigation. Dooley Dep. at 209, 212; McDermott Dep., Ex. 3. It is for this reason that Defendant contends that Plaintiff's employment was terminated.

### C. Pretext

In light of Defendant's proffered reason for the termination, Plaintiff is required to demonstrate that a genuine issue of material fact exists on the issue of pretext. Plaintiff may meet this burden by presenting evidence that Defendant's proffered reason: (1) had no basis in fact; (2) did not actually motivate his discharge; or (3) was insufficient to motivate his discharge.

<u>Wysong v. Jo-Ann Stores, Inc.</u>, No. 2412, 2006 Ohio App. LEXIS 4618, at *9 (Ohio Ct. App. Sept. 8, 2006) (internal citation omitted). Plaintiff attempts to prove pretext in each of the three ways, but, as discussed below, has failed to meet his burden of proffering evidence that would create a genuine issue of material fact on this issue or evidence from which a reasonable jury could find in his favor.

### 1. No Basis in Fact

Plaintiff contends that Defendant "lacked real evidence of [his] involvement" in the accident. Pl.'s Mem Opp'n at 26. In support of this contention, Plaintiff spends much time attempting to challenge the accuracy of Defendant's conclusion that he was the employee involved in the accident and the adequacy of the investigation which led to that conclusion. Plaintiff fails, however, to proffer sufficient evidence to raise a genuine issue of material fact concerning Defendant's findings.

Plaintiff asserts several complaints about Mr. Dooley's investigative efforts. While the court has considered all of them and finds them all to be without merit, the court notes the following arguments in particular. Plaintiff argues that: 1) Dooley allegedly took notes during his conversations with some agents, but was unable to locate those notes; 2) Dooley redacted the names of agents, and possibly additional information, from statements; 3) Dooley did not make any notes of his investigation during the investigation, but did so after the fact. Plaintiff states that he "disputes much of the information in [the] documents as false." Pl.'s Mem Opp'n at 29. Yet, Plaintiff has come forward with no evidence that Dooley in fact altered his notes or agents'

statements or that he kept false or inaccurate notes of his investigation. Plaintiff's own subjective belief in this regard is simply not sufficient to controvert the evidence presented by Defendant.

Plaintiff makes various arguments in an attempt to prove that the court should not believe Mr. Holden's statement. Plaintiff asserts that at the time Mr. Holden's statement was given, he was subject to a "last chance agreement" with Defendant because of drug use. Yet, Plaintiff has come forward with no evidence which would refute the information Mr. Holden provided.

The same is true of Plaintiff's arguments about the statements of Mr. McKee. Plaintiff appears to contend that Mr. McKee's photo identification of him as the employee who was in the baggage room shortly after the accident was flawed in some way. Plaintiff asserts that "[t]he identification occurred only after Dooley provided McKee a photograph of McDermott, Triplet who has a mustache, and Ravi Sinha who has a much darker complexion. Dooley did not show McKee a picture of Ron Heischman who also ran bags to the luggage room on the night of February 1, 2006 around the time frame of Flight 2212." Pl.'s Mem Opp'n at 31. Even assuming everything Plaintiff says is true, these assertions are still nothing more than an argument that Defendant could have conducted its investigation differently. Plaintiff has presented no evidence from Mr. McKee to the effect that he was mistaken in his identification or that the employee he saw could have been Mr. Heischman.

In an effort to disprove Mr. Dooley's belief during the investigation that Plaintiff was evasive and to demonstrate that it was possible for him to be involved in an accident and not know it,

17

Plaintiff offers the affidavits of two other employees, Mr. Sean McKay and Mr. Jose Alonzo.  They state that it is possible to run a luggage cart into a concrete column, or pillar, without realizing that it occurred.  Plaintiff contends that an agent might not hear that he or she is dragging a luggage cart because the tug is loud or because the agent may be wearing earplugs or headphones.  These affidavits do not address the circumstances of the specific accident in this case, which caused significant damage to America West equipment and produced crashes loud enough for employees who were not in the baggage room to hear.  In addition, they are insufficient to undermine the reasonableness of Defendant's belief that the accident in question was not the type of accident which would escape an employee's attention.  In light of this, the affidavits fail to raise any issue of material fact on this claim.

Even assuming Plaintiff had come forth with evidence which would support his contention that he was not involved in the accident, which he has not, as long as Defendant honestly believed its proffered reason that Plaintiff was the employee involved and that he was dishonest about his involvement, then Plaintiff may not establish pretext by coming forward with evidence that Defendant's employment decision had no basis in fact.  See Joostberns v. United Parcel Serv., 166 F. App'x 783, 794 (6th Cir. 2006).

The Sixth Circuit has adopted the "honest belief rule," which provides that an employer's proffered, nondiscriminatory reason for termination is considered honestly held when "the employer [is] able establish its reasonable reliance on the particularized facts that were before it at the time the decision was made."  Smith v. Chrysler Corp., 155 F.3d 799, 807 (6th Cir. 1998).  In making this determination, the court does not require "that the decisional

18

process used by the employer be optimal or that it left no stone
unturned.  Rather the key inquiry is whether the employer made a
reasonably informed and considered decision before taking an
adverse employment action." Id.  Once the employer has identified
the particularized facts that motivated its decision, the employee
has the opportunity to produce proof to the contrary.  "When the
employee is able to produce sufficient evidence to establish that
the employer failed to make a reasonably informed and considered
decision before taking its adverse action, thereby making its
decisional process 'unworthy of credence,' then any reliance placed
by the employer in such a process cannot be said to be honestly
held." Id. at 807-08.  An employee's bare assertion, however, that
the proffered reason has no basis in fact is insufficient to call
an employer's honest belief into question.  Id.

     The court finds that Defendant has come forward with
sufficient evidence to demonstrate that it reasonably relied on the
particularized facts when it determined that Plaintiff had been
involved in the February accident and was dishonest about his
involvement.  The court's above discussion of the investigation
Defendant undertook prior to terminating Plaintiff sets forth the
particularized facts upon which Defendant relied.  The burden of
production, thus, shifted to Plaintiff to demonstrate that
Defendant's reliance on the stated facts was unreasonable.  The
Sixth Circuit has observed that, in arguing pretext, a plaintiff
"must allege more than a dispute over the facts upon which his
discharge was based.  He must put forth evidence which demonstrates
that the employer did not 'honestly believe' in the proffered non-
discriminatory reason for its adverse employment action."
Braithwaite v. Timken Co., 258 F.3d 488, 493-94 (6th Cir. 2001).

19

Plaintiff has failed to do so. Plaintiff's efforts to prove that Mr. Holden was not a credible witness are similarly unavailing. See Palmer v. Potter, 97 F. App'x 522, 526 (6th Cir. 2004) (finding that the plaintiff's attempt to prove that his female coworker was not a credible witness was insufficient to overcome the employer's honestly-held belief that plaintiff had sexually harassed her).

Despite the numerous submissions of Plaintiff attempting to disprove Defendant's honest belief in Plaintiff's involvement and dishonesty, Plaintiff has come forward with no evidence from which a reasonable jury could find unreasonableness in Defendant's reliance on these facts as revealed through its investigation. Accordingly, Plaintiff is unable to demonstrate pretext through the first method.

### 2. Did Not Motivate Plaintiff's Discharge

Plaintiff attempts to argue that, because he had no motivation to lie about the accident, Defendant's honest belief is subject to genuine dispute. Plaintiff is mistaken that it is his motive to which the court looks. Indeed, even in the case upon which Plaintiff purports to rely for this proposition, the court did not address the plaintiff's motive, but instead looked to Defendant's motive. See Russell v. Keyes Fibre Co., 771 F. Supp. 951, 956-57 (N.D. Ind. 1991). The Russell court stated:

> If the court could determine that defendants honestly believed that plaintiff was a thief, then the defendants would be entitled to summary judgment. On this record, however, it is for the jury to determine the defendants' true motive by deciding whether the proffered justification is credible. In this action, the court cannot say, as a matter of law, what the defendants really believed when they fired plaintiff.

Id.  As the foregoing analysis in the case at bar demonstrates, Plaintiff has failed to come forward with evidence which would controvert Defendant's honestly-held belief.

Plaintiff also contends that Defendant's proffered reason did not motivate its decision to terminate him, but that instead Defendant terminated his employment because he filed a workers' compensation claim and/or because he made numerous safety complaints.  To the extent Plaintiff seeks to rely upon the temporal proximity between the filing of his workers' compensation claim and his termination, the court observes that mere temporal proximity is insufficient to rebut Defendant's legitimate reason for discharge.  White v. Simpson Indus., Inc., 1 F. App'x 462, 466 (6th Cir. 2001); see also Wysong, 2006 Ohio App. LEXIS 4618, at *18 (two-month interval between filing of claim and termination insufficient to support an inference of retaliation or to create a genuine issue of material fact on the issue of pretext).  Plaintiff has come forward with no other evidence which would create an issue of material fact with respect to this issue.

In addition to alleging that his employment was terminated because he filed a workers' compensation claim, Plaintiff also alleges that he was fired for making safety complaints to Mr. Dooley and to Defendant's Safety Hotline.  As will be discussed more fully, *infra*, the record is devoid of any evidence which would support a finding that Plaintiff was terminated for making safety complaints.  Consequently, Plaintiff is incapable of establishing pretext using this method either.

### 3. Insufficient to Motivate Plaintiff's Discharge

Plaintiff argues that his alleged dishonesty[2] was insufficient to warrant his discharge. Plaintiff asserts that there were other employees under Mr. Dooley's supervision who "had either failed to report, or denied truly corroborating eyewitness reports of accidents . . . [who] were not discharged for those incidents." Pl.'s Mem Opp'n at 45. Plaintiff relies upon the deposition testimony of Messrs. McKay and Alonzo, as well as the affidavits of Messrs. John Cawley and Ray Stoffer, in support of this contention. While each of these individuals claimed that other employees were involved in other accidents which, in some instances, caused far more damage, but were not terminated, there is no evidence in the record that these other employees were dishonest with Defendant about their roles in accidents.

Mr. Cawley and Mr. Stoffer were both, at times, elected employee representative members of Defendant's Employee Involvement Team. In this capacity, they served as liaisons between the employees and Defendant on various issues, including safety and discipline. Cawley Aff. ¶ 6; Stoffer Aff. ¶ 6. They both represented Plaintiff in his termination appeals process. Based on their knowledge of the facts, they each conclude that Plaintiff should not have been terminated. Messrs. Cawley and Stoffer state that it was not Defendant's policy to "automatically terminate or even discipline an employee for an accident at work." Cawley Aff.

---

[2]Plaintiff alleges that Defendant states in its motion for summary judgment that Plaintiff "lied" during the investigation, despite the fact that Dooley never agreed to the word "lied" in the deposition. Pl.'s Mem Opp'n at 45. Plaintiff's attempt to engage in a game of semantics is unavailing. By all accounts, including the language that Dooley used in Plaintiff's termination letter, it is clear that Defendant's proffered reason for terminating Plaintiff's employment was his dishonesty during the investigation.

¶ 6; Stoffer Aff. ¶ 7.  They also assert that "longevity and excellent work record were always given considerable weight in any decision regarding discipline and/or termination."  Cawley Aff. ¶ 6; Stoffer Aff. ¶ 7. According to Plaintiff, these statements prove that Defendant treated Plaintiff more harshly than was warranted under the circumstances.

This evidence does not show that Defendant lacked the authority to terminate Plaintiff for his conduct under Defendant's policies or procedures.  Defendant terminated Plaintiff not only for his involvement in the accident, but, more importantly, for his dishonesty throughout the investigation.  The affidavits of Mr. Cawley and Mr. Stoffer fail to show that similarly-situated employees who caused accidents and subsequently lied or failed to acknowledge their involvement were not terminated.  The mere fact that Mr. Cawley and Mr. Stoffer disagree with Defendant's business judgment is insufficient to show pretext.

In light of the dearth of evidence which would support any of Plaintiff's arguments of pretext, the court concludes that no genuine issue of material fact has been shown to exist, and that Defendant is entitled to summary judgment on Plaintiff's workers' compensation retaliation claim.  Plaintiff has attempted to do precisely that which is insufficient to avoid a motion for summary judgement:  Plaintiff seeks to rely on the hope that the trier of fact will disbelieve the Defendant's denial of a disputed fact, but Plaintiff has failed to meet his burden of proffering affirmative evidence to defeat Defendant's well-supported motion.  See Street v. J. C. Bradford & Co., 886 F.2d 1472, 1476 (6th Cir. 1989) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986)).

## II. Wrongful Discharge in Violation of Ohio Public Policy

Plaintiff has asserted a claim of wrongful discharge in violation of public policy. Plaintiff alleges that his termination was in violation of Ohio public policy because, under the clear public policy of Ohio, an employee should not be discharged due to: (1) attempts to address the employer's failure to maintain a safe workplace; (2) the employer's failure to maintain a safe workplace for the individual employee; (3) attempts to address the employer's failure to adhere to FAA Regulations; and (4) the employee's filing of a workers' compensation claim. Compl. ¶ 34.

A cause of action in tort for wrongful discharge in violation of public policy was recognized by the Ohio Supreme Court in Greeley v. Miami Valley Maint. Contractors, Inc., 49 Ohio St. 3d 228 (1990). In Greeley, the court held that "the right of employers to terminate employment at will for 'any cause' no longer includes the discharge of an employee where the discharge is in violation of a statute and contravenes public policy." Id., syllabus para. 2. In Painter v. Graley, 70 Ohio St. 3d 377 (Ohio 1994), the Ohio Supreme Court extended this doctrine to discharges which contravene a "clear public policy" discerned from such sources as statutory enactments, the Constitution of the United States and of the state of Ohio, administrative rules and regulations, and the common law.

To establish the tort of wrongful discharge in violation of public policy, a plaintiff bears the burden of proving: (1) that a clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the clarity element); (2) that dismissing employees under circumstances like those involved in the plaintiff's

24

dismissal would jeopardize the public policy (the jeopardy element); (3) the plaintiff's dismissal was motivated by conduct related to the public policy (the causation element); and (4) the employer lacked an overriding business justification for the dismissal (the overriding justification element). <u>Collins v. Rizkana</u>, 73 Ohio St. 3d 65 (Ohio 1995). The clarity and jeopardy elements are questions of law for the court and the causation and overriding justification elements are issues for the trier of fact. <u>Id.</u> at 70.

### A. Wrongful Discharge Based Upon Plaintiff's Workplace Safety Complaints

The Ohio Supreme Court has determined that retaliation against employees who file workplace safety complaints violates the public policy of Ohio and that, consequently, an employee may bring a claim for violation of Ohio public policy on that basis. <u>Pytlinski v. Brocar Prods., Inc.</u>, 94 Ohio St. 3d 77, 80 (Ohio 2002)("Ohio public policy favoring workplace safety is an independent basis upon which a cause of action for wrongful discharge in violation of public policy may be prosecuted."); <u>see also</u> <u>Kulch v. Structural Fibers, Inc.</u>, 78 Ohio St. 3d 134, 135 syllabus para. one (Ohio 1997) ("An at-will employee who is discharged or disciplined for filing a complaint with the Occupational Safety and Health Administration concerning matters of health and safety in the workplace is entitled to maintain a common-law tort action against the employer for wrongful discharge/discipline in violation of public policy[.]"). The employee does not have to file a complaint with OSHA to pursue such a claim. <u>Pytlinski</u>, 94 Ohio St. 3d at 80. Rather, the plaintiff need only have made the safety complaints to his employer, as it is the "retaliatory action of the employer that

triggers an action for violation of the public policy favoring workplace safety." Id. (citing Kulch, 78 Ohio St. 3d at 152-53). Pursuant to the foregoing Ohio Supreme Court precedent, the first two elements of the tort – clarity and jeopardy – have been established as a matter of law. The relevant inquiry, then, is whether Plaintiff has come forward with sufficient evidence to create a genuine issue of material fact with regard to the causation and overriding business justification elements. The court concludes that Plaintiff has not.

Plaintiff spends much of his memorandum in opposition to Defendant's motion for summary judgment setting forth the numerous safety violations which he contends Defendant committed and the actions he took to correct those violations. See Pl.'s Mem Opp'n at 9-24. Plaintiff then argues that Mr. Dooley "had a history of retaliating against employees who voiced safety concerns," and that because Plaintiff did so, Mr. Dooley terminated his employment with the company. Id. at 24. In support of this contention, Plaintiff offers the deposition testimony of Messrs. Alonzo and McKay, as well as the affidavit of Mr. Anthony Triplet, all employees of Defendant with whom Plaintiff worked while employed for the company. Mr. Alonzo testified that sometime "way before" Plaintiff began working at the Columbus terminal, Mr. Dooley announced in a meeting that the participants in the meeting should start setting up employees who were outspoken about issues. Alonzo Dep. at 59-60. Plaintiff contends that, at the time that this statement was made, a former employee of Defendant, Mr. Ivan Soto, had been outspoken about safety issues at the Columbus terminal and that Dooley "did not like Ivan Soto, because similar to [Plaintiff], he

26

was outspoken about safety and the work rules." Pl.'s Mem Opp'n at 24.

Plaintiff sets forth a series of facts from which he concludes that Mr. Soto was terminated because he made safety complaints. Plaintiff states that during an investigation of Mr. Soto for time card fraud, Mr. Alonzo, a lead agent, gave a statement that Mr. Soto had acted with his permission. Plaintiff alleges that, despite this statement, Mr. Dooley terminated Mr. Soto and harassed Mr. Alonzo until he resigned his lead agent position.

Plaintiff also offers the affidavit of Mr. Triplet in support of Plaintiff's theory regarding Mr. Soto's firing. Mr. Triplet states that during the investigation of Mr. Soto, he and another employee were present in a supervisor's office when Mr. Dooley was having a phone conversation with the supervisor. According to Mr. Triplet, the supervisor hung up the phone and immediately advised them that Mr. Dooley "would have [their] jobs" if they did not provide a statement against Soto. Triplet Aff. ¶ 13. On the basis of this information, Plaintiff concludes that Mr. Soto must have retaliated against Mr. Soto for making safety complaints.

Defendant disputes Plaintiff's contention that Mr. Dooley coerced anyone into providing statements against Mr. Soto's interests, as well as Plaintiff's conclusory statements about the reasons for Mr. Soto's discharge. Def.'s Reply, Dooley Aff. ¶¶ 3, 7. Defendant also disputes that Mr. Dooley made the statement to the supervisor, but admits that he did tell the supervisor that it was "extremely important" that Mr. Triplet provide a statement summarizing his knowledge of Mr. Soto's conduct. Id., ¶ 7.

There is no evidence that any one of these three employees, Mr. Alonzo, Mr. Triplet, or Mr. McKay, was involved in the

termination process of Mr. Soto.  Without personal knowledge of or involvement in the process, their statements of opinion about the basis for Soto's termination, or, for that matter, Plaintiff's termination, do not constitute evidence sufficient to establish or controvert Defendant's motives for its employment decisions. Further, Plaintiff has come forward with no evidence that the statement Mr. Triplet did provide, as required by his manager, Mr. Dooley, was inaccurate or was somehow untrue.  Defendant notes, and Plaintiff does not dispute, that the statement Mr. Triplet provided during the Soto investigation, was not against Mr. Soto's interests and Mr. Triplet is still employed by Defendant at its Columbus terminal.

Even assuming the facts are as Plaintiff alleges them, however, and even if Defendant retaliated against Mr. Soto, Plaintiff has failed to come forward with any evidence of a connection between Mr. Soto's termination and Plaintiff's, other than Plaintiff's own beliefs and the speculation of other employees.  "The mere fact that an employer may have discriminated against other employees, standing alone, is insufficient" to establish that a defendant discriminated against the plaintiff in this case. Byrnes v. LCI Comm. Holdings Co., 77 Ohio St. 3d 125, 130 (Ohio 1996); see also Schrand v. Fed. Pac. Elec. Co., 851 F.2d 152, 156 (6th Cir. 1988) (finding statements of former employees regarding their terminations irrelevant where "there was no evidence from which the alleged statements of the witnesses could logically or reasonably be tied to the decision to terminate [the plaintiff]").  Plaintiff essentially proffers as his evidence of causation the fact that he made numerous safety complaints and his belief that years before he arrived at the Columbus terminal, Mr.

28

Dooley terminated Mr. Soto's employment because he made safety complaints.  This is insufficient to raise even an inference of the existence of a causal link, in this case, between Plaintiff's safety complaints and his termination.

Plaintiff offers various statements from employees that they fear retaliation from Mr. Dooley generally, and specifically in response to the statements they gave about him in this case.  These employees' subjective feelings about Mr. Dooley and their perceived fears of him, without more, is not evidence which would create a genuine issue of material fact on the issue of causation.

Having considered the totality of the record, the court concludes that the evidence which Plaintiff has proffered is insufficient to create a genuine issue of material fact with regard to the causation element.  It is clear from the record that Plaintiff made numerous safety complaints, but as Defendant observes, even Plaintiff's deposition testimony highlights the absence of evidence to support a causal link.  In response to questioning, Plaintiff testified:

> Q.  What are you basing your allegation that you were terminated for reporting unsafe conditions on?
>
> A.  A long list of safety infractions that I reported to Mark Dooley, to the supervisors, to Gerry McGill at the safety hotline, to supervisors in load planning for Continental, load planning located in Houston, Texas.
>
> * * *
>
> A.  Those facts speak for themself [sic].  It's no doubt that Mark wanted me fired because I reported those safety violations.
>
> * * *

29

    A.    They speak for themself [sic], all the facts – all
         the violations that I did list to him and all the
         other people that I just mentioned.

                  * * *

    A.    As I stated before, all the facts point to that
         conclusion.  They are the facts of why I was fired.

                  * * *

    A.    The list of facts do speak for themselves, as I say.

McDermott Dep. at 70-73.  The mere fact that Plaintiff made
numerous safety complaints, standing alone, is insufficient proof
of causation.  Plaintiff does not point to any particular safety
complaint that he made at any time close enough in temporal
proximity for the trier of fact to infer a causal link, nor has he
provided any direct evidence of a retaliatory animus arising out of
his safety complaints.  For example, he has not shown that he was
ever criticized, threatened, or disciplined for making these
complaints.  Contrary to Plaintiff's arguments, the fact that
Plaintiff made numerous safety complaints over a three-year period
while working at Defendant's Columbus terminal, yet was not fired
during that lengthy period could support a jury's conclusion that
Defendant tolerated these safety complaints, and that they were not
the cause of Plaintiff's termination because if they had been,
Plaintiff would have been terminated much sooner.  Since Plaintiff
has failed to produce any evidence sufficient to raise even an
inference of causation, no genuine issue of material fact has been
shown to exist as to this essential element of his claim for
wrongful discharge in violation of public policy.

    Plaintiff also has failed to come forward with any evidence
to establish that Defendant lacked an overriding business

30

justification for his termination. Plaintiff incorrectly contends that lack of an overriding business justification is merely an affirmative defense, and that he does not have the burden of proving it. Plaintiff is mistaken. Ohio courts are clear that to establish a claim for wrongful discharge in violation of Ohio public policy, a plaintiff must establish all four elements of the claim, including that the defendant lacked an overriding business justification. <u>Tripp v. Beverly Enters.-Ohio, Inc.</u>, No. 21506, 2003 Ohio App. LEXIS 6158, at *25 (Ohio Ct. App. Dec. 17, 2003) (affirming trial court's dismissal of wrongful discharge claim where plaintiff had not produced evidence that her former employer lacked an overriding business justification for her termination); <u>Dorricott v. Fairhill Ctr. for Aging</u>, No. 98-3671, 1999 U.S. App. LEXIS 17985, at *12 (6th Cir. July 27, 1999) (affirming summary judgment where plaintiff failed to "present sufficient evidence of her employer's lack of an overriding legitimate justification for her discharge"). Defendant produced evidence of its honestly held belief that Defendant was involved in the February 1st accident and was dishonest about his involvement as its business justification for his termination, and Plaintiff has failed to produce evidence sufficient to raise a genuine issue of material fact as to whether that proffered justification did exist or was lacking. Consequently, Plaintiff is unable to prove wrongful discharge in violation of public policy as a result of his safety complaints.

### B.   Wrongful Discharge Based Upon the Filing of Workers' Compensation Claim

Plaintiff also asserts a claim for wrongful discharge in violation of Ohio public policy due to the filing of a workers' compensation claim. The court observes that it is questionable

31

whether Ohio recognizes such a claim.  See Bickers v. W. & S. Life
Ins. Co., 116 Ohio St. 3d 351, 357 (Ohio 2007) (noting in the
context of a non-retaliatory discharge that "it becomes apparent
that the imposition of common-law principles of wrongful discharge
into the workers' compensation arena runs counter to 'the balance
of mutual compromise between the interests of the employer and the
employee' as expressed by the General Assembly within the [Workers'
Compensation] Act" and holding that the plaintiff's remedy could
only be found within the workers' compensation statutes).   The
court need not decide this issue, however, because, as discussed
above, Plaintiff has failed to come forward with evidence which
would establish a claim for workers' compensation retaliation.
Accordingly, Defendant is entitled to summary judgment on the
entirety of Plaintiff's claim for wrongful discharge in violation
of Ohio public policy.

## III. Employer Intentional Tort

Plaintiff also asserts a claim for employer intentional tort.
Plaintiff alleges that Defendant required him to "perform the
dangerous task of loading, unloading, and lifting improperly and/or
inadequately labeled heavy bags," and that this was a dangerous
process which caused him physical harm.   Compl. ¶¶ 27-30.
Plaintiff contends that the injury he sustained on September 20,
2005, the same injury for which he filed his workers' compensation
claim, is the basis for this claim.   Pl.'s Mem Opp'n at 60.
Plaintiff asserts that he sustained this injury when he lifted a
heavy bag that was not properly marked as such.  At the outset, the
court observes that the bag that Plaintiff contends was improperly
marked was checked in not by Defendant or one of its employees, but
rather by employees of another airline at an international

destination under the control of the other airline. McDermott Dep. at 262-264. Nevertheless, because Plaintiff alleges that Defendant required him to perform the task of handling improperly-marked luggage, the court will address Plaintiff's intentional tort claim.

In Plaintiff's memorandum in opposition to Defendant's motion for summary judgment, Plaintiff first argues that Ohio Rev. Code § 2745.01, effective April 7, 2005, is unconstitutional. Plaintiff next argues that his claim should be analyzed under Ohio's common law standard for employer intentional tort as set forth in <u>Fyfe v. Jeno's, Inc.</u>, 59 Ohio St. 3d 115 (Ohio 1991), but that in either case, whether the court analyzes his claim under the current statute or employing the <u>Fyfe</u> test, his claim must survive.

In 1993, the Ohio legislature passed Ohio Rev. Code § 2745.01 with the intent to revise the requisite elements and standards of an employer intentional tort as had been developed through Ohio common law. <u>See</u> <u>Smith v. General Motors Corp.</u>, 172 F. App'x 661, 665 n.2 (6th Cir. 2006); <u>Miller v. Rubbermaid, Inc.</u>, No. 23466, 2007 Ohio App. LEXIS 2672, at *3 (Ohio Ct. App. June 13, 2007). The Ohio Supreme Court, however, found the statute to be unconstitutional in <u>Johnson v. BP Chemicals, Inc.</u>, 85 Ohio St. 3d 298, 308 (Ohio 1999), reasoning that "because [the statute] impose[d] "excessive standards (deliberate and intentional act), with a heightened burden of proof (clear and convincing evidence), it [was] clearly not a 'law that further[ed] the . . . comfort, health, safety, and general welfare of all employees.'" (internal citation omitted). After <u>Johnson</u>, the Ohio legislature repealed Ohio Rev. Code § 2745.01 and passed H.B. 498, which revised the former statute, effective on April 7, 2005.

33

Since the effective date of Ohio Rev. Code § 2745.01, the Ohio Supreme Court has not had the opportunity to decide the constitutionality of the new version of the statute.  In a recent opinion, however, one Ohio appellate court considered the history of employer intentional tort and determined that the revised 2005 version of Ohio Rev. Code § 2745.01 is also unconstitutional.  See Kiminksi v. Metal & Wire Products Co., No. 07-CO-15, 2008 Ohio App. LEXIS 1369, at *17 (Ohio Ct. App. Mar. 18, 2008) ("[B]y interpreting and applying the Ohio Supreme Court's past holdings dealing with similar statutes and the Ohio Constitution, we must reach the conclusion that R.C. 2745.01 is unconstitutional.")

It is not necessary for the court to rule on the constitutionality of this state statute.  Instead, the court first will apply the common law standard as articulated in Fyfe, and then apply the new standard set forth in R.C. 2745.01 to determine whether Plaintiff's claim can survive summary judgment under either standard.

**A.  Fyfe Test**

In Fyfe v. Jeno's, 59 Ohio St. 3d 115 (Ohio 1991), the Supreme Court of Ohio set forth the test used to determine whether an employer has committed an intentional tort.  In such a case, the plaintiff must prove:

> 1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation;

> 2) knowledge by the employer that if the employee is subjected by his employment to such a dangerous process, procedure, instrumentality, or condition, then harm to the employee will be a substantial certainty; and

34

> 3) that the employer, under such circumstances, and with
> such knowledge, did act to require the employee to
> continue to perform the dangerous task.

Id. at 112.  A plaintiff must offer proof beyond that required for negligence or recklessness.  Id.  In the absence of direct evidence of intent, a plaintiff may prove such a claim by inferred intent. Id.  To overcome a properly supported motion for summary judgment, an employee alleging that he was injured as a result of an intentional tort committed by an employer must provide specific evidence to raise a genuine issue of material fact as to each of the Fyfe requirements.  See Hannah v. Dayton Power & Light Co., 82 Ohio St. 3d 482, 485 (Ohio 1998).  Because all three elements of the Fyfe test must be established to maintain a prima facie case of an intentional tort, it follows that if there is no genuine issue of material fact as to any one of the elements, discussion of the other elements is unnecessary.  See Yates v. Gerstenslager Co., No. 06CA0030, 2006 Ohio App. LEXIS 6824, at *8 (Ohio Ct. App. Dec. 27, 2006) (finding the issue of substantial certainty dispositive and declining to address the other Fyfe elements).  Because the court finds the substantial certainty prong dispositive, the court will begin its analysis with that prong.

The second prong of the Fyfe test requires that Plaintiff demonstrate that Defendant was substantially certain that an employee would be injured if exposed to the dangerous condition. The second prong "is a difficult standard to meet."  McGee v. Goodyear Atomic Corp., 103 Ohio App. 3d 236, 246 (Ohio Ct. App. 1995).  As the Fyfe court articulated:

> To establish an intentional tort of an employer, proof
> beyond that required to prove negligence and beyond that
> to prove recklessness must be established.  Where the

35

employer acts despite his knowledge of some risk, his
conduct may be negligence.  As the probability increases
that particular consequences may follow, then the
employer's conduct may be characterized as recklessness.
As the probability that consequences will follow further
increases, and the employer knows that injuries to
employees are certain or substantially certain to result
from the process, procedure or condition and he still
proceeds, he is treated by the law as if he had in fact
desired to produce the result.  However, the mere
knowledge and appreciation of a risk – something short of
substantial certainty – is not intent.

Fyfe, syllabus para. 2.  Under this test, if a dangerous condition
is substantially certain to injure an employee, intent is inferred.
Goodin v. Columbia Gas of Ohio, 141 Ohio App. 3d 207, 218 (Ohio Ct.
App. 2000) (citing Harasyn v. Normandy Metals, Inc., 49 Ohio St. 3d
173, 175 (Ohio 1990)).

As proof of the substantial certainty element, Plaintiff
relies on his own deposition testimony that one of Defendant's
reasons for marking heavy bags was to provide proper warning to
employees that they needed to take extra care in lifting the bag.
This simply goes to whether Defendant had knowledge of the risk.
It does not prove that defendant was aware of a substantial
certainty that injury would occur, particularly in light of the
evidence that Defendant had procedures in place to ensure that
employees would not be injured lifting unmarked, heavy bags.
Plaintiff does not dispute that Defendant took the following steps
to prevent employees from being injured due to the possibility of
improperly marked bags: (1) created a heavy bag survey to trace the
origin of improperly marked bags; (2) coached and counseled agents
who fail to properly label bags; (3) addressed proper labeling of
bags in safety meetings; (4) placed a scale in the baggage room for
employees to weigh heavy bags; and (5) told employees to test bags

36

before lifting to determine if they were heavy.  Def.'s Mot. Summ.
J. at 29-30.  Defendant's response to the potential risk from its
employees lifting unlabeled, heavy luggage, even the luggage that
arrived from a different airline, evidences a lack of intent to
injure Plaintiff or any of its other employees.

Plaintiff next asserts that Defendant could have been
substantially certain that an injury would occur because he had
previously injured himself while lifting heavy luggage in 2003.
While evidence of prior accidents "indicates that such injuries
will possibly or even likely occur in the future, it does not
constitute a showing that [the employee's] injury was substantially
certain to occur."  <u>Heard v. United Parcel Serv.</u>, No. 98AP-1267,
1999 Ohio App. LEXIS 3360, at *16 (Ohio Ct. App. July 20, 1999).
Evidence of prior similar incidents is not dispositive.  <u>See</u>
<u>Goodin</u>, 141 Ohio App. 3d at 220.  Instead, prior accidents may be
considered as one factor in determining an employer's knowledge
that an injury is substantially certain to occur.  <u>Id.</u>  As the
court in <u>Blanton v. Pine Creek Farms</u>, 100 Ohio App. 3d 677, 684
(Ohio Ct. App. 1995), explained:

> Where there is a one-time occurrence, or when the same
> event happens twice, the likelihood of the event becomes
> more palpable.  If the event occurs, exactly as before,
> a third time, the result of the fourth occurrence can be
> reasonably anticipated.  If it happens a fourth time, it
> approaches substantial certainty, and few would expect an
> outcome other than that which had just previously
> occurred.

Here, Plaintiff had one accident in 2003, and the next
accident did not occur until 2005.  The absence of any injuries
between 2003 and 2005 undermines Plaintiff's argument that injury
to him was a substantial certainty.  Further, Plaintiff has come

37

forward with no evidence that injuries to employees from lifting improperly-marked bags occurred frequently or that Defendant failed to enforce its rule requiring that heavy luggage be properly marked.  Plaintiff has offered no evidence that Defendant failed to train its employees to mark the heavy bags or to anticipate that luggage from other airlines may fail to be properly marked.  There is no evidence that Defendant's employees regularly failed to follow its rules regarding the marking and handling of heavy luggage.  Defendant cannot be held liable under an intentional tort theory simply because of a negligent or reckless failure by either another airline or one of its employees to mark a bag.

Moreover, Defendant argues that Plaintiff had alternative means of proceeding when lifting heavy bags.  Defendant argues that Plaintiff could have tested the weight of the bag by moving it around on the ground before lifting it, in accordance with Defendant's instructions to its employees, or weighed it on a scale, or asked for assistance from another employee before lifting the bag.  Indeed, Plaintiff admits that he has asked for assistance lifting heavy luggage in the past.  McDermott Dep. at 266.

As the Goodin court noted, several courts have held that an employer "cannot be expected to anticipate an employee's actions that lead to an injury where that employee has alternative means of proceeding available to him."  Goodin, 141 Ohio App. 3d at 222 (quoting McConville v. Jackson Comfort Sys., Inc., 95 Ohio App. 3d 297, 303 (Ohio Ct. App. 1994)); see also Foust v. Magnum Rests., Inc., 97 Ohio App. 3d 451, 456 (Ohio Ct. App. 1994) (no finding of requisite intent where employee failed to wear protective gear made available to him by the employer, despite supervisors' knowledge that employees did not always wear the equipment); Baqgs v.

38

<u>Clarklift of Columbus</u>, No. 95APE11-1501, 1996 Ohio App. LEXIS 1434, at *16 (Ohio Ct. App. Apr. 9, 1996) (intent could not be inferred where plaintiff chose to perform his work in the manner in which he did, without the necessary lighting). Plaintiff has failed to produce evidence sufficient to raise a genuine issue of material fact on an essential element of his claim for employer intentional tort under the common law standard.

**B.   Ohio Rev. Code § 2745.01**

In light of the absence of a determination from the Ohio Supreme Court regarding the constitutionality of Ohio Rev. Code § 2745.01, the court will also consider Plaintiff's claims under the statute. Ohio Rev. Code § 2745.01 provides in pertinent part:

> (A) In an action brought against an employer by an employee . . . for damages resulting from an intentional tort committed by the employer during the course of employment, the employer shall not be liable unless the plaintiff proves that the employer committed the tortious act with the intent to injure another or with the belief that the injury was substantially certain to occur.
>
> (B) As used in this section, "substantially certain" means that an employer acts with deliberate intent to cause an employee to suffer an injury, a disease, a condition, or death.
>
> (C) Deliberate removal by an employer of an equipment safety guard . . . creates a rebuttable presumption that the removal . . . was committed with intent to injury another if an injury or an occupational disease or condition occurs as a direct result.

Ohio Rev. Code § 2745.01. Plaintiff asserts that he succeeds under the new standard because Defendant repeatedly "refused to enforce its policy of properly marking heavy bags." Pl.'s Mem Opp'n at 58. Plaintiff contends that this failure was the removal of a safety device for the purposes of the statute. <u>Id.</u> at 59. However,

Plaintiff has produced no evidence of any failure by Defendant to enforce its policies for properly marking bags.  As discussed above, Plaintiff has failed to controvert in any way the procedures Defendant implemented to specifically address the problem of the occasional improperly marked bag and to prevent employee injuries. As Plaintiff has proffered no evidence from which a reasonable jury could find that Defendant committed an intentional tort against him, under either the common law standard or the statute, Defendant is entitled to summary judgement on this claim.

**IV.  Conclusion**

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED.

It is so ORDERED.

<u>/s/ James L. Graham</u>
JAMES L. GRAHAM
Senior United States District Judge

Date: April 11, 2008